# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: Antonio Gray,<br><br>Debtor. | Bankruptcy No. 08 B 19002<br>Adversary No. 08 A 00811<br>Chapter 7<br>Judge Manuel Barbosa |
| ABC's, Inc. d/b/a Premier Moving Systems, Inc.,<br>Plaintiff,<br>v.<br>Antonio Gray,<br>Defendant. | |

## MEMORANDUM OPINION

This matter comes before the Court on the objection to discharge filed by plaintiff creditor ABC's, Inc. d/b/a Premier Moving Systems, Inc. ("Creditor"), pursuant to 11 U.S.C. § 523(a)(2), on October 7, 2008. For the reasons set forth herein, the Court sustains Creditor's objection to discharge.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings pursuant to 28 U.S.C. § 157(b)(2).

## FACTS AND BACKGROUND

The following facts are taken from plaintiff creditor ABC's, Inc. d/b/a Premier Moving Systems, Inc.'s ("Creditor") adversary complaint and from all public records and proceedings to which the parties refer. Many of the facts alleged in the complaint, which were admitted in the answer, are uncontested.

Debtor Antonio M. Gray ("Debtor") filed a voluntary Chapter 7 bankruptcy petition on

July 24, 2008. The meeting of creditors, pursuant to 11 U.S.C. § 341, was held on August 18, 2008 and objections to discharge were due by October 17, 2008. After the § 341 meeting, on August 19, 2008, the Chapter 7 trustee Charles J. Myler ("Trustee") filed a No-Asset Report, pursuant to § 341(d). On October 7, 2008, Creditor filed adversary complaint number 08-A-00811 against Debtor to object to Debtor's discharge based on allegations of false pretenses, false representation and/or actual fraud, pursuant to 11 U.S.C. § 523(a)(2). The Court granted Debtor's discharge on October 20, 2008.

In 2005, Creditor, an Illinois moving company, employed Debtor as an independent contractor engaged to drive Creditor's moving truck to various locations across the United States of America to pick up and delivery assorted household furniture to Creditor's customers. As Creditor's driver, Debtor received a Creditor moving truck and service instructions for each furniture delivery from Creditor. Debtor would then receive cash, cashier's checks, and/or credit card payments from Creditor's customers after completing the deliveries for Creditor. Creditor admitted that Debtor returned its moving truck a month after Debtor returned to Illinois in 2005. Debtor, however, admits that he did not turn over to Creditor certain shipping manifests and customer payments, including: an uncashed cashier's check, dated August 8, 2005, made out to Creditor in the amount of $4684.16 from the Rohner delivery; and cash in the amount of $7596.56 from the Regulski delivery. Creditor's customer, Drigalla, directly paid Creditor through its national agent, Atlas Van Lines and/or Paul Arpin Van Lines, via credit card. According to Debtor, the Germain delivery was a Arpin Van Lines warehouse to warehouse delivery without any paperwork or funds transfer. Debtor continued to work for Creditor until 2006.

Subsequently, in 2005, Creditor filed a verified three-count complaint against Debtor in Illinois state court. In the first count, Creditor alleged that Debtor breached his contract when he

did not pay Creditor for advancements and equipment, including: truck repairs that totaled $906.89; truck operating costs that totaled $2837.31; interstate transportation shipment overpayments that totaled $590.87; and truck recovery costs that totaled $1456.62 for abandoned equipment left in Florida after a delivery. In the second count, Creditor alleged that Debtor converted $16,536.34 in money owed to Creditor for furniture deliveries to four customers, including: Regulski; Drigalla; Rohner; and Germain. In the third count, Creditor alleged that Debtor converted Creditor's truck when he collected payment for those four deliveries and did not return the money to Creditor. Creditor asserted that a comparable rental truck costs $2400 for the two-week delivery timeframe.

On April 11, 2006, Creditor served Debtor with requests for admission of facts, and, subsequently, Debtor responded to the requests for admission. Debtor admitted that Creditor advanced money to him, including $2512 in August 2005 as partial compensation for services previously rendered by Debtor and $325.31 in 2005. Debtor denied that Creditor loaned him $906.89 for truck repairs. While Debtor admitted that he was obligated to return any Creditor equipment to Creditor after he completed Creditor's transport shipments, he denied that he abandoned Creditor's equipment in Florida following a delivery for Creditor's customers. From June to August 2005, Debtor admitted that he picked up and delivered furniture for four Creditor customers, including: Regulski, Drigalla, Rohner and Germain. Debtor admitted that he only received payment from Regulski and Rohner, and he did not turn over these two payments to Creditor.

After an arbitration hearing that involved both parties, an arbitration award was entered against Debtor and for Creditor on February 28, 2007 in the amount of $18,457.72, plus costs. A memorandum of judgment was entered on April 24, 2007 and recorded on May 17, 2007.

In July 2008, Creditor received notice that Debtor filed a Chapter 7 bankruptcy which

listed his alleged $18,457.82 debt to ABC as dischargeable. On October 7, 2008, Creditor filed an objection to discharge, pursuant to 11 U.S.C. § 523(a)(2). On February 23, 2009, Debtor filed an initial answer that generally denied that he had ever received any cash payments or funds from Creditor's customers that belonged to Creditor. On March 24, 2009, however, Debtor filed an amended answer that admits that he did not turn over to Creditor certain shipping manifests and customer payments, including: an uncashed cashier's check made out to Creditor in the amount of $4684.16 from the "Rohner" delivery; and cash in the amount of $7596.56 from the "Rugulski" delivery.

A hearing on this one-count complaint under § 523(a)(2) was held on April 16, 2009. The parties stipulated to: (1) Creditor's three count complaint against Debtor in Illinois state court in 2005; (2) Creditor's request for admissions in the state court proceeding; (3) Debtor's responses to the Creditor's request for admissions in the state court proceeding; (4) the resulting arbitration award on April 24, 2007; and (5) its related memorandum of judgment on May 17, 2007. Creditor's counsel called Richard W. Worm, Creditor's president, to testify. Debtor's counsel called Debtor to testify.

## DISCUSSION

The main purpose of a discharge in bankruptcy is to give a debtor a fresh start. See Vill. of San Jose v. McWilliams, 284 F.3d 785, 790 (7th Cir. 2002). The party that seeks to establish an exception to the discharge of a debt bears the burden of proof. Goldberg Secs., Inc. v. Scarlata (In re Scarlata), 979 F.2d 521, 524 (7th Cir. 1992); Banner Oil Co. v. Bryson (In re Bryson), 187 B.R. 939, 957 (Bankr. N.D. Ill. 1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); see also In re McFarland, 84 F.3d 943, 946 (7th Cir. 1996); In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). Exceptions to discharge

are to be construed strictly against a creditor and liberally in favor of a debtor. In re Morris, 223 F.3d 548, 552 (7th Cir. 2000); Kolodziej v. Reines (In re Reines), 142 F.3d 970, 972-73 (7th Cir. 1998); In re Zarzynski, 771 F.2d 304, 306 (7th Cir. 1985). "The statute is narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul), 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001). Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts.

Section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
> . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

[11 U.S.C. § 523(a)(2)(A).]

Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses, and a false representation. Ibid.; Bletnitsky v. Jairath (In re Jairath), 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). Even though the elements for each exception vary under common law, courts in the Seventh Circuit are required to apply a single test to all three grounds, with the exception that misrepresentation and reliance thereon is not always required to establish actual fraud. Jairath, 259 B.R. at 314 (citing McClellan v. Cantrell, 217 F.3d 890, 894 (7th Cir.2000)). To sustain a claim under section 523(a)(2)(A), a creditor must establish the following elements: (1) the debtor made a false representation of fact (2) that the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive, and (3) the creditor justifiably relied on the false representation. Baker Dev. Corp. v. Mulder (In re Mulder), 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004); Bednarsz v. Brzakala (In re Brzakala), 305 B.R. 705,

710 (Bankr. N.D. Ill. 2004). To prevail on a § 523(a)(2)(A) complaint, all three elements must be established. Glucona Am., Inc. v. Ardisson (In re Ardisson), 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). Failure to establish any one fact is outcome determinative. Jairath, 259 B.R. at 314.

"Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." CFC Wireforms, Inc. v. Monroe (In re Monroe), 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004) (citations omitted). "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." Jairath, 259 B.R. at 315 (citations omitted).

Reliance on a false pretense or false representation under § 523(a)(2)(A) must be "justifiable." Field v. Mans, 516 U.S. 59, 74-75 (1995). The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. Id. at 70-72. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard. Id. at 71; Bombardier Capital, Inc. v. Dobek (In re Dobek), 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. Mayer v. Spanel Int'l Ltd. (In re Mayer), 51 F.3d 670, 676 (7th Cir. 1995) ("Reliance means the conjunction of a material misrepresentation with causation in fact."). "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." Mercantile Bank v. Canovas, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (quoting Field v. Mans, 516 U.S. at 70).

The Seventh Circuit has made it clear that misrepresentation and reliance thereon are not

always required to establish actual fraud. McClellan v. Cantrell, 217 F.3d 890, 894 (7th Cir. 2000). Indeed, the Seventh Circuit recently defined the term "fraud":

> "Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."
>
> [Id. at 893 (quoting Stapleton v. Holt, 250 P.2d 451, 453-54 (Okla.1952)).]

"Actual fraud" is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Ibid. (internal quotation omitted). Thus, a different analysis must be utilized when a creditor alleges actual fraud. Ibid. The Cantrell court opined that because common law fraud does not always take the form of a misrepresentation, a creditor need not allege misrepresentation and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). Ibid. Instead, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. Ibid. The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only actual ones. Id. at 894. "Though cases often say that exclusions from dischargeability should be narrowly construed, we have emphasized that they 'serve vital functions.'" Id. at 893 (quoting Mayer, 51 F.3d at 674) (internal citations omitted). "'Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment.'" Ibid. (quoting Mayer, 51 F.3d at 674).

Here, Debtor knowingly took money for delivery services that belonged to Creditor and did not turn those funds over to Creditor as required by his duties as an independent contractor for Creditor's furniture delivery company. Instead, Debtor purposefully withheld these funds as collateral for alleged debt that Creditor owed him for previous delivery services. The record,

including the requests to admit from the state court proceeding, reflects that Debtor received various payments for Debtor's past services, yet Debtor's main contention at the April 16, 2009 hearing is that he was not fully compensated for these past services. At the April 16, 2009 hearing, Debtor also indicated that he was dissatisfied with the lack of delivery work on at least three occasions which required him drive back to the Creditor's Illinois location on his "own dime." This does not constitute sufficient reason to withhold funds that were due to Creditor, and, instead, the Court finds that these actions encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Cantrell, 217 F.3d at 893. Debtor had alternative remedies to address any alleged dispute with Creditor, but Debtor chose instead to attempt to simply withhold these funds from Creditor. Therefore, the Court sustains Creditor's objection to discharge, pursuant to 11 U.S.C. § 523(a)(2)(A).

**CONCLUSION**

For the foregoing reasons, the Court sustains Creditor's objection to discharge.

THEREFORE, IT IS ORDERED that

the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: May 14, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge